IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

QUINTON RICHARD REED,    Case No. 3:14-cv-00553-MA

        Plaintiff,    AMENDED OPINION AND ORDER

v.

COMMISSIONER OF SOCIAL
SECURITY ADMINISTRATION

        Defendant.

LAURIE B. MAPES
PO Box 1241
Scappoose, OR 97056

    Attorney for Plaintiff

S. AMANDA MARSHALL
United States Attorney
District of Oregon
RONALD K. SILVER
Assistant United States Attorney
1000 S.W. Third Ave., Suite 600
Portland, OR 97204

DIANA ANDSAGER
Social Security Administration
Office of the General Counsel
701 Fifth Ave., Suite 2900, M/S 221A
Seattle, WA 98104-7075

    Attorneys for Defendant

1 - OPINION AND ORDER

Marsh, Judge

Plaintiff Quinton Reed seeks judicial review of the final decision of the Commissioner of Social Security denying his application for Disability Insurance Benefits (DIB) under Title II of the Social Security Act, 42 U.S.C §§ 401-403. This Court has jurisdiction pursuant to 42 U.S.C. § 405(g). For the reasons that follow, I reverse and remand for an immediate calculation and award of benefits.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff protectively filed an application for DIB on August 15, 2010, alleging disability beginning December 17, 2009, due to chronic obstructive pulmonary disease (COPD), emphysema, and loss of bowel control due to sigmoid anastamosis. Plaintiff meets the insured status requirements for a DIB application through December 31, 2014.

Plaintiff's claims were denied initially and upon reconsideration. Plaintiff filed a request for a hearing before an administrative law judge (ALJ). An ALJ held a hearing on March 20, 2012, at which plaintiff appeared with her attorney and testified. A vocational expert, Richard M. Hincks, also appeared at the hearing and testified. On March 29, 2012, the ALJ issued an unfavorable decision. The Appeals Council denied plaintiff's request for review, and therefore, the ALJ's decision became the final decision of the Commissioner for purposes of review.

2 - OPINION AND ORDER

Born in 1959, plaintiff was 53 years old on the date of the ALJ's adverse decision. Plaintiff has a ninth grade education level, obtained his General Education Degree (GED), and completed a lineman apprenticeship. Plaintiff's past relevant work includes consistent work as a lineman for the past twenty years.

## THE ALJ'S DISABILITY ANALYSIS

The Commissioner has established a five-step sequential process for determining whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. § 404.1520. Each step is potentially dispositive. The claimant bears the burden of proof at steps one through four. *Valentine v. Commissioner Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009); *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At step five, the burden shifts to the Commissioner to show that the claimant can do other work which exists in the national economy. *Hill v. Astrue*, 698 F.3d 1153, 1161 (9th Cir. 2012).

At step one, the ALJ found that plaintiff has not engaged in substantial gainful activity since his alleged onset of disability. At step two, the ALJ found that plaintiff had the following severe impairments: diverticulitis; chronic abdominal pain; hypertension; diarrhea; and COPD. At step three, the ALJ found that plaintiff's impairments, or combination of impairments, did not meet or medically equal a listed impairment.

The ALJ assessed plaintiff with a residual functional capacity (RFC) to perform light work as defined in 20 C.F.R. § 404.1567(b) except that he must avoid concentrated exposure to dust, odors, and gases; he cannot climb ramps, stairs, ladders, ropes, or scaffolds and requires close access to a restroom.

At step four, the ALJ found plaintiff is unable to perform any past relevant work. At step five, the ALJ concluded that considering plaintiff's age, education, work experience, and residual functional capacity, jobs exist in significant numbers in the national economy that plaintiff can perform, such as assembler, hand packer, and mail clerk. Accordingly, the ALJ concluded that plaintiff has not been under a disability under the Social Security Act from November 23, 2009, through the date of the decision.

## ISSUES ON REVIEW

On appeal to this court, plaintiff contends the following errors were committed: (1) the Appeals Council erred in denying review of the ALJ's decision; and (2) the ALJ failed to properly evaluate plaintiff's testimony.[1]

---

[1] Plaintiff submitted new medical opinion evidence to the Appeals Council and requested review of the ALJ's unfavorable decision. Tr. 17, 203-04. The new evidence consisted of opinions from treating physicians, James Santoro, M.D. and Elham Karamooz, M.D. Although the Appeals Council denied review of the ALJ decision, the Appeals Council made the new opinion evidence part of the administrative record. Tr. 1-2, 1536-1540.

4 - OPINION AND ORDER

I.  **Appeal Council Decision and new evidence**

Plaintiff requests this court to review the Appeals Council's decision to deny review of the ALJ's decision. Plaintiff also appears to argue that when reviewing the overall record, including the opinions of Drs. Santoro and Karamooz, the ALJ's decision is not supported by substantial evidence.

"We have held that we do not have jurisdiction to review a decision of the Appeals Council denying a request for review of an ALJ's decision, because the Appeals Council decision is a non-final agency action. *See Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1231 (9th Cir. 2011). With respect to plaintiff's first argument, I disagree. This court does not have jurisdiction to review an Appeals Council decision to deny request for review.

However, this court has a duty to consider the entire record before it, including new evidence submitted to the Appeals Council and made part of the overall administrative record. "When the Appeals Council considers new evidence in deciding whether to review a decision of the ALJ, that evidence becomes part of the administrative record, which the district court must consider when reviewing the Commissioner's final decision for substantial evidence." *Brewes v. Commissioner of Social Sec. Admin.*, 682 F.3d 1157, 1163 (9th Cir. 2012); *see Tacket*, 180 F.3d at 1097-98 (holding that a court reviewing the Commissioner's decision must consider the record as a whole).

5 - OPINION AND ORDER

In light of the new evidence submitted, I consider the entire record, including the opinions of Drs. Santoro and Karamooz when reviewing the ALJ's adverse credibility determination and determining whether the ALJ's decision is supported by substantial evidence.

## II. The ALJ Erred in Evaluating Plaintiff's Credibility

### A. Standards

To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must perform two stages of analysis. 20 C.F.R. § 404.12629. The first stage is a threshold test in which the claimant must produce objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged. *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012); *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). At the second stage of the credibility analysis, absent affirmative evidence of malingering, the ALJ must provide clear and convincing reasons for discrediting the claimant's testimony regarding the severity of the symptoms. *Carmickle v. Commissioner Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008); *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007).

The ALJ must make findings that are sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony. *Ghanim*, 763 F.3d

1154, 1163 (9th Cir. 2014); *Tommasetti*, 533 F.3d at 1039. Factors the ALJ may consider when making such credibility determinations include the objective medical evidence, the claimant's treatment history, the claimant's daily activities, inconsistencies in testimony, effectiveness or adverse side effects of any pain medication, and relevant character evidence. *Ghanim*, 763 F.3d at 1163; *Tommasetti*, 533 F.3d at 1039.

### B.  Analysis

At the March 20, 2012 hearing, plaintiff testified that in an eight-hour period, his chronic diarrhea requires him to use a bathroom at least six times for a total of one hour. Tr. 67. Plaintiff also testified at the hearing that he can perform tasks around the house for about twenty minutes before feeling winded and needing to rest. Tr. 69. Plaintiff further testified that he feels exhausted all the time because his lungs do not obtain enough oxygen. Tr. 52. Plaintiff also noted that although he completes some light housework, he relies on his son's help to complete more laborious tasks, such as vacuuming. Tr. 59.

In an October 3, 2010, Activities of Daily Living (ADLs) report, plaintiff reported that he gets winded simply carrying a bag of groceries up one flight of stairs. Tr. 173. Plaintiff noted preparing his own meals, completing laundry, and cleaning around the house but that physical activity often increases his need to use a restroom. Tr. 176. Plaintiff also reported that he leaves his

7 - OPINION AND ORDER

house two to three times a week to visit the grocery store and post office. *Id.* Plaintiff noted that he can slowly walk one block but still experiences shortness of breath. Tr. 178. Plaintiff also noted that he does not leave his house unless he knows there is a bathroom available at his destination. Tr. 174, 180. In a Pain & Fatigue Questionnaire, plaintiff also noted experiencing fatigue requiring him to complete tasks slowly and take breaks to rest in between tasks.

In the decision, the ALJ found plaintiff only partially credible. The ALJ gave five reasons for rejecting plaintiff's testimony. As discussed below, taken together, these reasons fail to reach the clear and convincing level.

### 1. inconsistent with medical evidence

The ALJ first discounts plaintiff's testimony on the grounds that plaintiff's statements are inconsistent with the medical evidence in the record. *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) ("While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical record is still a relevant factor in determining the severity of the claimant's pain and its disabling effects.").

Contrary to the ALJ's finding, the medical evidence supports plaintiff's allegations. After his partial colectomy surgery in April 2009, plaintiff noted a significant increase in daily bowel

movements and has consistently reported symptoms of chronic diarrhea and fecal urgency to his doctors. *See generally* Tr. 205-207, 343, 360, 401, 733, 798. For example, in November 2010, plaintiff provided treating physician, James A Santoro, M.D., a diary of all his bowel movements for the past several months, noting two to ten bowel movements daily. Tr. 733. Plaintiff provided a similar diary to another treating physician, Janet R. Kelly, M.D., earlier in June 2010. Tr. 206. Dr. Kelly diagnosed chronic diarrhea and noted that plaintiff is "pretty straightforward" in recounting his medical history. Tr. 206, 207.

Objective medical tests are also consistent with plaintiff's allegations regarding excessive bowel movements. A March 2010 CT of the abdomen confirmed colonic diverticulosis with mild inflammatory stranding around the sigmoid colon. Tr. 264-65. In December 2011, plaintiff was admitted to the hospital with acute chronic cholecystitis and had surgery to remove his gallbladder. Tr. 756. Inpatient hospital notes indicate that after plaintiff's gallbladder surgery, he suffered a stump leak, pancreatitis, ileus and gouty failure, requiring a six week hospital stay. Plaintiff also required another month of post-operative outpatient care after discharge from the hospital. Tr. 750, 758, 764, 768.

With respect to plaintiff's COPD, pulmonary function tests (PFT) have consistently indicated moderate to severe obstructive lung defect. Tr. 704-05, 1300, 1523, 1526, 1529, 1531. An August

28, 2011 chest x-ray noted evidence of chronic lung disease but noted no change from previous x-rays. Tr. 792. While the ALJ correctly noted that plaintiff's previous PFTs indicated a significant response to bronchodilator medication (inhaler), the ALJ fails to discuss plaintiff's December 2011 PFT, which indicates a worsening in lung function. Specifically, the December 2011 PFT noted a moderate decrease in diffusing capacity and a mild response to bronchodilator medication. Tr. 1523. Notably, plaintiff stated that he had used his inhaler five to six hours prior to administration of this test.[2] *Id.*

Moreover, the opinions of plaintiff's treating physicians, Drs. Santoro and Karamooz further demonstrate that the ALJ's reasoning is not supported by substantial evidence. In a June 25, 2012 letter, Dr. Santoro opined that the combination of plaintiff's physical and mental impairments[3] render him unemployable in terms of his past relevant work. Tr. 1537. Dr. Santoro also opined that plaintiff is unable to perform light work on a sustained full-time basis and noted that plaintiff suffers from symptoms of chronic

---

[2] While not a part of the medical evidence, the administrative record indicates that two state social security employees, who spoke telephonically with plaintiff on two separate occasions, noted that plaintiff sounded very winded and needed to take a break from speaking every couple of minutes to catch his breath. Tr. 710.

[3] Although Dr. Santoro treated plaintiff for minor depression, plaintiff alleges disability due to physical impairments.

abdominal pain, diarrhea, shortness of breath, and insomnia. *Id.* Dr. Santoro indicated that since 2007, he has treated plaintiff for irritable bowel syndrome, incisional hernia, COPD, and sleep apnea. *Id.*

Plaintiff's allegation of shortness of breath is consistent with Dr. Karamooz's opinion as well. On June 30, 2012, Dr. Karamooz noted plaintiff has a diagnosis of chronic obstructive pulmonary disease and emphysema. Dr. Karamooz further noted that plaintiff's symptoms are entirely consistent with COPD and emphysema and opined that these impairments cause significant dyspnea with light exertion. Tr. 1539. Dr. Karamooz also opined that plaintiff is not responding to maximum COPD inhaler therapy. Tr. 1540. As discussed above, PFTs and chest x-rays are consistent with Dr. Karamooz's medical opinion. *See generally* Tr. 704-05, 1300, 1523, 1526, 1529, 1531.

Finally, in relying on the December 3, 2010 medical opinion of nonexamining physician, J. Scott Pritchard, D.O., the ALJ failed to consider plaintiff's significant medical treatment in 2011 and 2012, which further bolsters plaintiff's testimony. Although Dr. Pritchard opined that plaintiff is capable of light work on full-time basis,[4] Dr. Pritchard did not have the opportunity to review plaintiff's recent medical records in 2011, including plaintiff's

---

[4] Dr. Pritchard's opinion is affirmed by nonexamining physician, Richard Alley, M.D., on January 25, 2011. Tr. 90-92.

11 - OPINION AND ORDER

six week hospitalization for acute chronic cholecystitis, gallbladder removal surgery, and plaintiff's December 2011 PFT. Tr. 32, 81-83, 756.

In sum, the ALJ's adverse credibility determination is not supported by substantial evidence in the overall medical record. Thus, on the record before me, the ALJ erred in rejecting plaintiff's testimony on this basis.

### 2. ADLs

Next, the ALJ discounts plaintiff's credibility by finding that plaintiff's ADLs are inconsistent with his subjective limitations. For example, the ALJ noted that plaintiff is able to prepare meals, wash dishes, complete laundry, and mow his lawn. Tr. 31. The ALJ also noted that "despite bowl incontinence," plaintiff drives a car and shops in stores. *Id.* The ALJ further noted that plaintiff drove 45 minutes to attend the hearing. *Id.*

As plaintiff correctly contends, the ALJ mischaracterizes evidence of plaintiff's ADLs. While it is true that plaintiff drove 45 minutes to the hearing, he also testified at the hearing that he did not eat anything all day to remain continent for the drive to the hearing. Tr. 52. Although the ALJ noted that plaintiff mows the lawn, the ALJ failed to clarify that plaintiff testified at the hearing that he uses a riding mower. Tr. 58. Plaintiff also reported that he only leaves his house if he knows his destination has a public restroom available, such as a grocery store. Tr. 174.

12 - OPINION AND ORDER

Moreover, plaintiff's ability to perform light household chores is not inconsistent with his allegations. "The Social Security Act does not require that claimants be utterly incapacitated to be eligible for benefits, and many home activities may not be easily transferable to a work environment where it might be impossible to rest periodically or take medication." *Smolen v. Chater*, 80 F.3d 1273, 1284 n.7 (9th Cir. 1996). Plaintiff noted that although he is able to perform household chores, he completes these physical tasks slowly and rests when he becomes winded or fatigued. Tr. 181. Plaintiff testified that his son helps him with more strenuous chores. Tr. 59. Therefore, I conclude that the ALJ's reasoning on this point is not supported by substantial evidence.

### 3. non-compliance with medications

Evidence of "unexplained or inadequately explained failure to follow a prescribed course of treatment" is a proper reason to discredit a claimant's testimony. *Tommasetti*, 553 F.3d at 1039. However, "where a claimant provides evidence of a good reason for not taking medication for h[is] symptoms, h[is] symptom testimony cannot be rejected for not doing so." *Smolen*, 80 F.3d at 1284. Here, the ALJ noted that in December 2011, plaintiff's doctor reported consistently elevated blood pressure due to plaintiff missing doses of his blood pressure medication. Tr. 32. The ALJ also noted that plaintiff was taking unknown pills from a friend. *Id.* The ALJ's reasoning is flawed.

13 - OPINION AND ORDER

The ALJ ignores facts in the record that sufficiently explain plaintiff's missed doses of his blood pressure medication. As a December 24, 2011 hospital treatment note indicates, plaintiff had elevated blood pressure because he was hospitalized for four days without his blood pressure medication. Tr. 1199. Plaintiff's hospitalization adequately excuses missing doses of his blood pressure medication, and thus, does not support an adverse credibility determination.

Likewise, while inappropriately obtaining prescription medication may constitute a failure to follow prescribed treatment, in this case, the ALJ's reasoning is pure speculation. *Tommasetti*, 553 F.3d at 1039. On March 12, 2010, plaintiff went to the emergency room for severe pain due to hemorrhoids and was admitted to the emergency room. Plaintiff admitted to a nurse that he took unknown pills from a friend to help relieve his pain, and there is no evidence in the record to confirm that the pills were a prescribed medication. Tr. 350. To be sure, plaintiff's treatment notes do not document any abuse of prescription medications. *Id.* Accordingly, the ALJ's mere speculation does not constitute a convincing reason to reject plaintiff's testimony. Therefore, I conclude that the ALJ's reasoning on this point is not supported by substantial evidence.

#### 4. drug and alcohol abuse

Next, the ALJ referenced plaintiff's ongoing consumption of alcohol and past use of tobacco, to discredit his testimony because such use "raises the question of whether he is motivated to improve his functional ability."

The Commissioner concedes that the ALJ erred in discrediting plaintiff's testimony based on his past tobacco use. Def. Br. (#12), p. 11. I agree with the Commissioner. Specifically, plaintiff stopped smoking in 2006, four years before he applied for disability. Tr. 207. Plaintiff's past use of tobacco has no reference to his credibility nor does it demonstrate a lack of motivation in improving his health. On the contrary, plaintiff's smoking cessation demonstrates that he is motivated to improve his health. Thus, plaintiff's past tobacco use was an inappropriate reason for discrediting his testimony.

The record reflects ongoing alcohol use by plaintiff. At the hearing, plaintiff testified to drinking four twelve ounce beers a night and six beers a night when he was working. Tr. 61. However, the record does not reflect any medical opinion indicating that plaintiff's alcohol consumption negatively impacts his severe impairments. Dr. Santoro diagnosed alcohol abuse in February 27, 2008, but the primary concern was drinking while taking an anti-fungus medication, Lamisil, due to the drug's risk of liver failure increased by concomitant alcohol use. Tr. 662. Plaintiff's liver

15 - OPINION AND ORDER

function tests (LFT) were normal at the time. *Id.* Still, plaintiff's physicians have encouraged plaintiff to stop drinking for general health purposes. Tr. 362, 607, 611. Therefore, I conclude that the ALJ appropriately discredited plaintiff on this basis.

### 5. work history

The ALJ also found plaintiff's work history inconsistent with his testimony. Tr. 32. Evidence of a poor work history that suggests a claimant is not motivated to work is a proper reason to discredit claimant's testimony that he is unable to work. *Thomas v. Barnhart,* 278 F.3d 947, 959 (9th Cir. 2002). The ALJ's reasoning is not supported by substantial evidence.

Contrary to the ALJ's finding, plaintiff's consistent and extensive work history supports his credibility. Plaintiff testified at the hearing that he worked for the past twenty years as a lineman without significant gaps in employment. Tr. 48, 151-52. Plaintiff testified that he was laid off for economic reasons, and that he was having difficulty keeping up with the demands of his job due to his symptoms. Tr. 49-50. Plaintiff's testimony is backed by substantial evidence, including consistent earnings records. Tr. 151-52. Thus, I find that this is not a clear or convincing reason to discredit plaintiff's credibility.

In sum, I have concluded that several of the ALJ's reasons for adverse credibility determination are not supported by substantial

16 - OPINION AND ORDER

evidence. Although the record supports one of the ALJ's reasons, this reason alone is not clear and convincing support for the ALJ's adverse credibility determination. The ALJ has erred.

### III. Credit as True

After finding the ALJ erred, this court has the discretion to remand for further proceedings or for immediate payment of benefits. *Vasquez v. Astrue*, 572 F.3d 586, 593 (9th Cir. 2009); *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). The issue turns on the utility of further proceedings. A remand for an award of benefits is appropriate where there is no useful purpose to be served by further proceedings or where the record is fully developed. *Vasquez*, 572 F.3d at 593.

The Ninth Circuit has established a three-part test "for determining when evidence should be credited and an immediate award of benefits directed." *Harman*, 211 F.3d at 1178. The court should grant an immediate award of benefits when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.
> *Id.*

Where it is not clear that the ALJ would be required to award benefits were the improperly rejected evidence credited, the court has discretion whether to credit the evidence. *Connett v. Barnhart*, 340 F.3d 873, 876 (9th Cir. 2003). The reviewing court should

17 - OPINION AND ORDER

decline to credit testimony when "outstanding issues" remain. *Luna v. Astrue*, 623 F.3d 1032, 1035 (9th Cir. 2010). Moreover, "[plaintiff] is not entitled to benefits under the statute unless [he] is, in fact, disabled, no matter how egregious the ALJ's errors may be." *Strauss v. Comm'r of Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011).

Here, all the conditions of the credit-as-true rule are satisfied. First, the record has been fully developed and there is no need for further administrative proceedings. Second, the ALJ failed to provide legally sufficient reasons for discrediting plaintiff's testimony. Third, if plaintiff's testimony is credited as true, the ALJ would be required to find plaintiff disabled at Step Five on remand. *Garrison*, 759 F.3d at 1022; *Holohan v. Massanari*, 246 F.3d 1195, 1211 (9th Cir. 2001).

Indeed, plaintiff testified that he requires use of a bathroom an average of six times for a total of one hour out of an eight-hour workday, which is twelve and a half percent of the workday. The VE testified that if a person is absent for ten percent or more of the workday, the person is not employable in the national economy. The VE further testified that the ten percent or more absence translates to being off task occasionally, which precludes competitive employment. *Id.* Therefore, there are no outstanding issues that require resolution.

Lastly, considering the record as a whole and the Commissioner's arguments, I have no basis to doubt that plaintiff is disabled under the Act. Therefore, the proper remedy is to remand for calculation of benefits. *Garrison*, 759 F.3d at 1022-23.

## CONCLUSION

For the reasons stated above, the Commissioner's final decision denying benefits to plaintiff is REVERSED and this proceeding is REMANDED for an immediate calculation and award of benefits.

IT IS SO ORDERED.

DATED this __30__ day of March, 2015.

                                      */s/ Malcolm F. Marsh*
                                      Malcolm F. Marsh
                                      United States District Judge